MT. EVEREST SKI SHOPS, INC.

v.

NORDICA USA, INC.

NORDICA USA, INC.

v.

MT. EVEREST SKI SHOPS, INC.

Civ. No. 87–106.

United States District Court, D. Vermont.

March 22, 1989.

See also 736 F.Supp. 531.

---

David S. Acker, Winston & Strawn, Chicago, Ill., and Rolf M. Sternberg, Barr, Sternberg & Moss, Bennington, Vt., for Mt. Everest Ski Shops, Inc.

Robert B. Hemley and Dennis R. Pearson, Gravel & Shea, Burlington, Vt., for Nordica USA, Inc.

## MEMORANDUM AND INTERLOCUTORY ORDER

HOLDEN, Senior District Judge.

The plaintiff Mt. Everest Ski Shops, Inc., filed its complaint against Nordica USA, Inc., and The Ski Barn, Inc., on March 9, 1987, in the District of New Jersey. The complaint comprised ten counts, sounding predominantly in anti-trust under the laws of the United States and of New Jersey. Other pendent claims included tortious interference with contractual rights and with prospective business advantage, consumer fraud, breach of contract, and violation of the New Jersey Franchise Practices Act. Judge Bissell transferred the action to the District of Vermont pursuant to 28 U.S.C. § 1404(a). In the course of subsequent proceedings, the court has denied or dismissed each count alleged in the plaintiff's complaint.[1]

---

[1]. Order of Dismissal (filed Aug. 2, 1988) (order dismissing counts 2, 4, 7, and 9 with respect to Nordica USA, Inc.); Memorandum of Decision (filed Aug. 2, 1988) (decision to dismiss counts 2, 4, 7, and 9 with respect to Nordica USA, Inc.); Memorandum of Decision at 9 (filed May 2, 1988) (decision to dismiss counts 1 and 8 with respect to Nordica USA, Inc., and directing Clerk to schedule hearing to settle an order of dismissal); Opinion and Order at 3 (filed Dec. 14, 1987) (modifying order of October 13, 1987, to dismiss count 1 with prejudice and counts 2 through 7 without prejudice); Opinion and Order (filed Oct. 13, 1987) (decision and order dismissing counts 1 through 7 with respect to The Ski Barn, Inc.); Findings and Conclusions of Law at 12 (filed Aug. 25, 1987) (decision and order denying prayer for relief of count 10).

Review of the record indicates that the court has not entered an order of dismissal of counts 1 and 8 pursuant to its Memorandum of Deci-

The motion of defendant Nordica USA for summary judgment of its counterclaim, and the cross-motion of plaintiff Mt. Everest Ski Shops for summary judgment to dismiss the counterclaim, remain for disposition. The defendant filed its motion on September 6, 1988; the plaintiff filed its cross-motion on September 23, 1988. Each party has opposed the motion of the other, and each has submitted, in accordance with local rule 5, a supporting statement of material facts concerning which no genuine issue to be tried exists.

*Jurisdiction of the Defendant's Counterclaim*

The court's jurisdiction was originally based upon 28 U.S.C. § 1331 and the doctrine of pendent jurisdiction, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). After dismissal of the sole federal claim under 15 U.S.C. § 1, the court derived its jurisdiction from 28 U.S.C. § 1332: Mt. Everest Ski Shops is incorporated under the laws of New Jersey and has its principal place of business there. Nordica USA is incorporated under the laws of Delaware and has its principal place of business in Vermont. The amount in controversy exceeded $10,000.[2]

 A court retains ancillary jurisdiction over compulsory counterclaims after all other claims for relief have been adjudicated. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974) (*dictum*); *Harris v. Steinem*, 571 F.2d 119, 121–22 (2d Cir. 1978). Federal jurisdictional requirements must be satisfied independently before a court may proceed to adjudge a permissive counterclaim. *Id.* at 122.

 A counterclaim which depends upon the judgment in the main action itself

is not a compulsory counterclaim. *Harris v. Steinem*, 571 F.2d at 124–25. The plaintiff's claims and the defendant's counterclaim for the cost of defending against them do not arise out of the same "transaction or occurrence". Fed.R.Civ.P. 13(a); *Morgan v. Westinghouse Elec. Corp.*, 579 F.Supp. 867, 870 (N.D.Ga.1984); *see Harris v. Steinem*, 571 F.2d at 123–25. The counterclaim is permissive within the terms of rule 13; therefore the court must derive jurisdiction independently. *Id.* at 122.

The counterclaim, being founded upon a contract between the parties, arises under state law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Therefore, the court's jurisdiction must derive from 28 U.S.C. § 1332. Diversity of citizenship exists. Because the defendant claims that the attorney's fees total $105,158.16, the requisite amount in controversy exists.[3]

*Motion for Summary Judgment by Nordica USA, Inc.*

The plaintiff and the defendant formed several contracts between April 1, 1982, and March 31, 1987, under which the plaintiff purchased Nordica ski boots from the defendant for sale or rental at fixed locations. Nordica USA bases its counterclaim upon a provision common to all of the Authorized Dealer Agreements:

> In the event Nordica is the successful party on any claim by it, counterclaim by it, or defense by it in any action or proceeding brought by or against it with respect to the Authorized Dealer, Authorized Dealer shall pay, and hereby agrees to pay, in addition to all other sums which may be due, Nordica's reasonable attorney's fees, costs and disbursements attributable to such claim, counterclaim or defense.[4]

---

sion of May 2, 1988. The present order will include dismissal of the two counts.

2. Verified Complaint for Injunctive and Other Relief ¶¶ 2, 4, 6 (filed Mar. 9, 1987); *see* 28 U.S.C. § 1332(a), (c) (1982) (prior to amendment by Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, §§ 201–202, 102 Stat. 4642, 4646).

3. *See* 28 U.S.C. § 1332(a), (c) (1982); Verified Complaint for Injunctive and Other Relief ¶¶ 2, 4. Nordica's Rule 5(C)(I) Statement in Support of Its Motion for Summary Judgment on Its Counterclaim, of Material Facts as to which There Is no Genuine Issue to Be Tried ¶ 6 (filed Sept. 6, 1988).

4. The record includes several contracts, each providing in identical language for such pay-

Suit would not lie with the defendant on any of the contracts formed before and terminating on March 31, 1985, for each of these contracts terminated on March 31 without automatic renewal.[5] Two Agreements were effective between April 1, 1985 and March 31, 1986. One covered the plaintiff's store in Nanuet, New York, and permitted retail and rental of Nordica ski boots. The other covered the plaintiff's store in Westwood, New Jersey, and permitted only rental of Nordica ski boots. Both contracts for 1985–1986 renewed automatically, pursuant to paragraph 1(c), and were effective until termination on March 31, 1987.[6] Both included the renumbered paragraph 18(c) cited in the counterclaim. The court infers that the defendant counterclaims upon both of these contracts.

The plaintiff filed its complaint on March 9, 1987. Any claims under paragraph 18(c) accrued with the filing of the complaint and the concurrent requirement of defense. Paragraph 18(c) was effective on March 9, 1987, because the contract did not terminate until March 31, 1987. Findings and Conclusions of Law at 6; *see Adm'r of the*

*Estate of Hubbard v. Billings,* 35 Vt. 599 (1863).

■ Rule 56 of the *Federal Rules of Civil Procedure* provides:

> [Summary] judgment ... shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the [supporting] affidavits [in the party's favor], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The movant must "show initially the absence of a genuine issue concerning any material fact". *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The court views the evidence "in the light most favorable to the opposing party". *Id.* at 157, 90 S.Ct. at 1608. Likewise, "inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion". *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Once the moving party

---

ment of attorney's fees. Transcript, Deposition of Robert A. MacDermott, Mar. 26, 1987, exhibit 1 (filed Aug. 10, 1987) (Nordica USA, Inc. Authorized Dealer Agreement ¶ 16(c) (effective from signature on May 13, 1982 through Mar. 31, 1983, for location in Westwood, N.J.)); Transcript, Hearing on Preliminary Injunctive Relief, July 8–9, 1987, exhibit F (filed Oct. 21, 1988) (Nordica USA, Inc. Authorized Dealer Agreement ¶ 16(c) (effective apparently from Apr. 1, 1984 through Mar. 31, 1985, for location in Nanuet, N.Y.)); *id.* exhibit A (Nordica USA, Inc. Authorized Dealer Agreement ¶ 18(c) (effective from signature on June 21, 1985 through Mar. 31, 1986, and renewing automatically thereafter unless terminated, for location in Nanuet, N.Y.)); *id.* exhibit B (Nordica USA, Inc. Authorized Dealer Agreement ¶ 18(c) (effective from signature on July 9, 1985 through Mar. 31, 1986, and renewing automatically thereafter unless terminated, for location in Westwood, N.J.)); *see id.* exhibit G (Letter from James Garland to Mt. Everest Ski Shop [sic] (Apr. 1, 1983) (renewing Authorized Dealer Agreement for 1982–1983, effective Apr. 1, 1983 through Mar. 31, 1984)).

The record also refers to an Authorized Dealer Agreement in effect between the parties during the 1982–1983 season for the location in Nanuet, N.Y., although the document itself was not submitted as an exhibit. Transcript, Hearing on Preliminary Injunctive Relief, July 8–9, 1987, at 40–44; Transcript, Deposition of Robert A. MacDermott, Mar. 26, 1987, at 17; Affidavit of Robert A. MacDermott ¶ 7 (filed Apr. 1, 1987).

Nordica USA does not specify upon which contract or contracts it sues. Its motion for summary judgment designates all of the contracts. Defendant Nordica USA, Inc.'s Motion for Summary Judgment on Its Counterclaim with Incorporated Memorandum of Law at 3–4 (filed Sept. 6, 1988). The counterclaim refers to "paragraph 18(c) of the applicable dealer agreements". Answer, Affirmative Defenses and Counterclaim of Nordica USA, Inc. at 7 (filed Apr. 29, 1987).

5. Transcript of Proceedings at 30 (D.N.J. Apr. 3, 1987) (statement of David Acker, counsel for plaintiff).

6. Findings and Conclusions of Law at 2–3, 6 (filed Aug. 26, 1987); Transcript, Hearing on Preliminary Injunctive Relief, July 8–9, 1987, exhibits A, B (Nordica USA, Inc. Authorized Dealer Agreement ¶ 1(c) (two agreements automatically renewing to remain effective from Apr. 1, 1986, through Mar. 31, 1987, respectively for locations in Nanuet, N.Y., and Westwood, N.J.)).

has met its burden, the opposing party must establish a genuine issue about a material fact. The substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

█ Under the "American Rule", each party bears its respective costs of litigation. A statute, however, may authorize an exception to this rule. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). A contract, too, may vary the application of the rule; the court may depart from the American Rule only to the extent which the contract provides. *In re Appeal of Gadhue*, 149 Vt. 322, 327, 544 A.2d 1151, 1154 (1987).

The contract between the parties provides that the law of Vermont shall govern in construction and application of its terms.[7] In the instant case, which elements the movant must establish depends upon what the contractual provision means as a matter of law. "[C]onstruction of contract terms is a matter of law and not a factual determination." *Vermont Nat'l Bank v. Chittenden Trust Co.*, 143 Vt. 257, 266–67, 465 A.2d 284 (1983).

The courts of Vermont have established several rules which this court, in accordance with paragraph 18(d) of the two contracts, applies to the two contracts upon which the defendant relies. The court applies them to construe the contract, in order to determine which legal elements the defendant must establish in its motion for summary judgment. "[I]f the instrument is clear and unambiguous, it is to be given effect according to its language, for the intention and understanding of the parties must be deemed to be that which their writing declares." *Randall v. Clifford*, 119 Vt. 216, 223, 122 A.2d 833 (1956).

> It is the duty of the court, if possible, to construe the instrument so as to give effect to every part, and form from the parts a harmonious whole.... While the language of a written instrument governs in determining its effect and operation, in construing such language the nature and condition of the subject mat-

ter, the purposes sought to be accomplished, and the circumstances in which the parties contract tending to throw light on their apparent intention at the time the instrument was executed, may be considered.... [W]hen the intent of the parties upon the face of the instrument is doubtful, or the language used will admit of more than one interpretation, the court will look at the situation and motives of the parties, the subject matter of the contract, and the object to be attained by it; and will receive parol evidence to this end.

*Stratton v. Cartmell*, 114 Vt. 191, 194, 42 A.2d 419 (1945) (citations omitted).

█ Paragraph 18(c), upon which the defendant relies, has four elements. Nordica USA must show (1) that it is the successful party (2) on any counterclaim or defense by it in any action brought against it with respect to the Authorized Dealer, and (3) that its attorney's fees, costs, and disbursements were attributable to such counterclaim or defense and (4) were reasonable.

The defendant has been the successful party in defense of all of the plaintiff's claims. Order of Dismissal (filed Aug. 2, 1988) (order dismissing counts 2, 4, 7, and 9 with respect to Nordica USA, Inc.); Memorandum of Decision at 9 (filed May 2, 1988) (decision to dismiss counts 1 and 8 with respect to Nordica USA, Inc.); note 1 *infra* (order dismissing counts 1 and 8 with respect to Nordica USA, Inc.); Findings and Conclusions of Law at 12 (filed Aug. 25, 1987) (decision and order denying prayer for relief of count 10).

The crucial question of construction raised by the defendant's motion is whether paragraph 18(c) comprehends claims extraneous to the Authorized Dealer Agreement against which Nordica USA defends. Only the eighth count alleged a breach of contract. The defendant requests compensation of over $100,000 for attorney's fees and costs incurred in defense against every claim of the complaint.

Paragraph 18(c) of the two contracts specifies its application to "any action ... with respect to the Authorized Dealer". Nordica USA, Inc. Authorized Dealer

7. Nordica USA, Inc. Authorized Dealer Agreement ¶ 18(d) (both contracts for 1985–1986).

Agreement ¶ 18(c) (effective as renewed from Apr. 1, 1986, through Mar. 31, 1987, for locations at Westwood, N.J., and Nanuet, N.Y.). Elsewhere the contracts provide that "[t]he relationship between Nordica and the Authorized Dealer is, and shall remain that of seller and buyer". *Id.* ¶ 10(b). The contractual responsibilities of each focus upon the defendant's sale and the plaintiff's retail or rental of Nordica's products—the subject matter and purpose of the contracts. *Id.* ¶¶ 2, 3. Paragraph 18(c) itself incorporates this relationship of seller and buyer, for it recognizes that the underlying cause of action which entails attorney's fees will be for "other sums which may be due". *Id.* ¶ 18(c); *cf.* ¶ 8(b)(v) ("The termination of this Agreement shall not release the Authorized Dealer from the obligation to pay any sum that may be owing to Nordica (whether then or thereafter due to Nordica) or operate to discharge any liability that had been incurred by the Authorized Dealer prior thereto."). The limitations of liability refer only to aspects of the contractual relationship, excluding claims for consequential and special damages, recoupment of investment, and lost profits. *Id.* ¶¶ 1(f)(2), 10(b)–(c). The clauses within the same paragraph 18 which treat selection of forum and governing law also limit their scope to the Agreement. *Id.* ¶ 18(a), (d).

The court has considered the "language" of these two Agreements, the "nature and condition of the subject matter", and the "purposes sought to be accomplished". *Stratton v. Cartmell*, 114 Vt. at 194, 42 A.2d 419. "[A]ny action ... with respect to the Authorized Dealer" comprehends claims respecting the contractual relationship of buyer and seller delimited by the Authorized Dealer Agreement. Paragraph 18(c) is unambiguously limited to claims under the contract.[8]

The plaintiff's claims in anti-trust were not an action on the contractual relationship between Nordica USA and Mt. Everest Ski Shops, but an action respecting the relationship between Nordica USA and The

---

**8.** In the Second Circuit, "unless the moving party can establish th[a]t contractual language is not 'susceptible of at least two fairly reasonable meanings,' ... a material issue exists concerning the parties' intent, and the non-moving party has a right to present extrinsic evidence regarding the meaning of the contested term." *Wards Co. v. Stamford Ridgeway Assoc.*, 761 F.2d 117, 120 (2d Cir.1985) (quoting *Schering Corp. v. Home Ins. Corp.*, 712 F.2d 4, 9 (2d Cir.1983)).

The defendant and plaintiff disagree about the legal construction of paragraph 18(c). However, neither party claims that the language of paragraph 18(c) is ambiguous. Defendant Nordica USA's Reply Memorandum (1) In Support of Motion for Summary Judgment on Counterclaim for Attorneys' Fees and (2) In Opposition to Plaintiff's Cross-motion for Summary Judgment on Counterclaim at 6–7 (filed Oct. 11, 1988); *see* Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment on Its [sic] Counterclaim of Defendant Nor[di]ca USA, Inc. and Cross-motion for Summary Judgment at 4–5 (filed Sept. 23, 1988). Neither party deemed that a material issue existed concerning the parties' intent, for neither party included the parties' intentions as either a material fact to be tried or a material fact about which there was no genuine dispute. *See* Defendant's Response to Plaintiff's Local Rule 5(C)(I) Statement Dated September 22, 1988 (filed Oct. 11, 1988); Plaintiff's Rule 5.C.I. Statement (filed Sept. 23, 1988); Plaintiff's 5.C.I.(a) Statement in Opposition to the Motion for Summary Judgment on Its Counterclaim Filed by Defendant Nor[d]ica USA, Inc.

(filed Sept. 23, 1988); Nordica's Rule 5(C)(I) Statement in Support of Its Motion for Summary Judgment on Its Counterclaim, of Material Facts as to Which There Is no Genuine Issue to Be Tried (filed Sept. 6, 1988).

During the hearing on February 7, 1989, to discuss the instant motions, the court enquired whether paragraph 18(c) was ambiguous. See *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 & n. 2 (2d Cir.1975) (describing the relation of oral testimony to the court's responsibility for construction of the contract). Each party persisted in its conclusion that the paragraph was unambiguous, and the parties persisted in their contrary constructions of the paragraph.

Upon consideration of the papers and this colloquy with counsel for the defendant, the court has concluded that the construction proposed by the defendant is not "fairly reasonable". Basically, the defendant would have the court give comprehensive effect to the words "any action"; whereas the contract limits the actual term, "any action ... with respect to the Authorized Dealer", in the fashion set forth in the text. The defendant would have paragraph 18(c) include an action in tort for personal injury to an employee of one party, the party in turn becoming liable vicariously. Nothing in the contract supports the defendant's selective exposition. The plaintiff's papers and the oral arguments of its counsel, on the other hand, confirmed the court's construction of paragraph 18(c) under the principles of *Randall v. Clifford*, 119 Vt. 216, 122 A.2d 833 (1956), and *Stratton v.*

Ski Barn. The District of New Jersey so noted, as did counsel for defendant The Ski Barn and counsel for plaintiff. Nordica USA has also so recognized.[9]

The pendent claims under the Consumer Fraud Act (seventh count) and the Franchise Practices Act (ninth count) also exceed the ambit of paragraph 18(c). Neither claim is *ex contractu;* the duties arise by statute, not from the agreement of the parties. The defendant has averred that the Authorized Dealer Agreement is not a "franchise" under the Act and that the business relationship of the plaintiff and the defendant is not a franchise.[10] The court so concluded. Memorandum of Decision at 9–11 (filed Aug. 2, 1988). The Consumer Fraud Act by its own terms does not depend upon contractual relationships, but refers to tortious conduct. *See* N.J.Rev. Stat. § 56:8–2 (1937 & Supp.1967). The defendant alleged that the Act does not comprehend the relationship between the plaintiff and the defendant.[11] The court has so held. Memorandum of Decision at 6–7 (filed Aug. 2, 1988).

The prayer for injunctive relief (tenth count), however, in part seeks specific performance of contractual duties,[12] and thus comes within the parties' agreement expressed in paragraph 18(c).

The defendant therefore is entitled as a matter of law to those attorney's fees, costs, and disbursements attributable to its defense against the claim for breach of contract (eighth count) and that part of the claim for injunctive relief (tenth count) seeking to enforce the contract.[13] This entitlement does not include attorney's fees and costs attributable to its counterclaim to recover attorney's fees and costs. *Peter Fabrics, Inc. v. S.S. "Hermes",* 765 F.2d 306, 316 (2d Cir.1985). The defendant's affidavits do not differentiate which of its fees and costs are thusly attributable.

The court will therefore grant to the defendant Nordica USA partial summary judgment, under authority of rule 56(d) of the *Federal Rules of Civil Procedure.* It remains for the defendant to establish (1) which attorney's fees and costs were attrib-

*Cartmell,* 114 Vt. 191, 42 A.2d 419 (1945). *E.g.,* Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment on Its [sic] Counterclaim of Defendant Nor[di]ca USA, Inc. and Cross-motion for Summary Judgment at 4–5. Neither party presents, nor does the record disclose, a "genuine factual issue[ ] that properly can be resolved only by a finder of fact because ... [it] may reasonably be resolved in favor of either party". *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

9. Transcript of Proceedings at 17–18, 20–21, 38 (D.N.J. Apr. 3, 1987); *see* Transcript, Hearing on Defendant's Motion for Summary Judgment and Motion to Compel, Feb. 11, 1988, at 1–6 (filed Sept. 29, 1988) (opening statement of Robert Hemley); Defendant Nordica USA, Inc.'s Memorandum in Support of Defendant Ski Barn's Motion for Summary Judgment at 1–2, 8, 10–11 (filed Sept. 17, 1987); *cf.* Affidavit of Michael B. Rosenberg in Support of Defendant Nordica USA's Motion for Summary Judgment on Its Counterclaim ¶¶ 5, 7 (filed Oct. 11, 1988) (stating affiant's opinion about the reasonableness of the legal fees for "litigation of an antitrust case").

10. Reply Memorandum of Nordica USA in Support of Renewed Motion for Summary Judgment at 3 (filed July 12, 1988); Defendant Nordica USA, Inc.'s Renewed Motion for Summary

Judgment on All Remaining Claims at 11–15 (filed May 16, 1988).

11. Reply Memorandum of Nordica USA in Support of Renewed Motion for Summary Judgment at 6 (filed July 12, 1988); Defendant Nordica USA, Inc.'s Renewed Motion for Summary Judgment on All Remaining Claims at 11 (filed May 16, 1988).

12. Verified Complaint for Injunctive and Other Relief ¶¶ 41–42.

13. The defendant must exclude, for example, all of its attorney's fees and costs attributable to its Renewed Motion for Summary Judgment on All Remaining Claims (filed May 16, 1988) and its Motion for Summary Judgment on Its Counterclaim with Incorporated Memorandum of Law (filed Sept. 6, 1988). It must exclude all attorney's fees and costs attributable to its work in behalf of The Ski Barn, Inc. *E.g.,* Defendant Nordica USA, Inc.'s Memorandum in Support of Defendant Ski Barn's Motion for Summary Judgment (filed Sept. 17, 1987); Affidavit of Robert B. Hemley, exhibit A, at 15–16 (filed Sept. 6, 1988) (entries of 9/10/87, 1.8 hours; 9/11/87, 5.2 hours; 9/14/87, 1.0 hour; 9/15/87, .8 hour). The defendant will have to apportion costs attributable, for example, to its Motion for Summary Judgment with Incorporated Memorandum of Law (filed Dec. 18, 1987).

utable to defending the claim for breach of contract and that part of the claim for injunctive relief seeking to enforce the contract, and (2) the reasonableness thereof.

*Cross-motion for Summary Judgment by Mt. Everest Ski Shops, Inc.*

The plaintiff's cross-motion for summary judgment avers that the defendant may not recover attorney's fees and expenses in accordance with paragraph 18(c). The argument is not entirely clear. It seems to depend upon the plaintiff's characterization of the two Authorized Dealer Agreements as contracts of adhesion. The plaintiff urges that fault should be imputed to the defendant for allegedly requiring contracts of this type, and the court should therefore apply "the general rule of construction in Vermont that a doubtful provision in a written instrument is construed against the party responsible for drafting it". *Trustees of Net Realty Holding Trust v. AVCO Financial Serv. of Barre, Inc.*, 147 Vt. 472, 475–76, 520 A.2d 981, 983 (1986). Because of the defendant's alleged fault in terminating the contract under the circumstances of this case and in using contracts of adhesion, asserts the plaintiff, the court should construe paragraph 18(c) to the benefit of Mt. Everest Ski Shops.

The plaintiff has invoked but misapplied the rule.[14] The complete rule set forth in the margin demonstrates this fact. The rule is not generally applied until normal rules of construction and parol evidence have failed to determine the legal operation of the contractual provision. Only then is the canon invoked to construe the provision in the manner less favorable to the party that drafted the contract. In the present case, the plaintiff claims in its papers and its representations during the oral hearing on February 7 that paragraph 18(c) is clear.[15] Secondly, neither its supporting statement of material facts about which no genuine issue exists nor its opposition to the defendant's motion for summary judgment raises questions of intent requiring parol evidence. Finally, the plaintiff's argument, that a contract of adhesion requires *per se* a construction less favorable to the party that composed it, does not accord with the law of Vermont as its highest court has enunciated it. "The fact that the parties may be in unequal bargaining positions is not enough alone to justify non-enforcement of a contract. . . ." *Lamoille Grain Co. v. St. Johnsbury & Lamoille County R.R.*, 135 Vt. 5, 8, 369 A.2d 1389 (1976).

For these reasons, and the reasons stated above granting partial summary judgment to the defendant, the court will deny the plaintiff's cross-motion for summary judgment.

It is so ORDERED.

---

**14.** *See generally* 3 A. Corbin, *Corbin on Contracts* § 559 (1960 & Supp.1984).

When the terms of a written contract have been chosen by one of the parties and merely assented to by the other, this fact will in some cases affect the interpretation that will be given to these terms by the court. After applying all of the ordinary processes of interpretation, including all existing usages, general, local, technical, trade, and the custom and agreement of the two parties with each other, having admitted in evidence and duly weighed all the relevant circumstances and communications between the parties, there may still be doubt as to the meaning that should be given and made effective by the court. This doubt may be so great that the court should hold that no contract exists. If, however, it is clear that the parties tried to make a valid contract, and the remaining doubt as to the proper interpretation is merely as to which of two possible and reasonable meanings should be adopted, the court will adopt that one which is the less favorable in its legal effect to the party who chose the words.

*Id.* § 559, at 262 (1960); *e.g., United States v. Seckinger*, 397 U.S. 203, 216, 90 S.Ct. 880, 887, 25 L.Ed.2d 224 (1970). Compare *Siegelman v. Cunard White Star Ltd.*, 221 F.2d 189, 204–06 (2d Cir.1955) (Frank, J., dissenting) (describing principles governing "contracts of adhesion").

**15.** At the oral hearing, counsel for the plaintiff continued to aver that the contract was not ambiguous. At the conclusion of the hearing, after the court had questioned both parties about whether paragraph 18(c) was unambiguous, counsel for the plaintiff argued in the alternative that if the court would not grant its cross-motion for summary judgment, it should require trial and receive parol evidence about the parties' intent.